UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Erik Ferrell, | ) | CASE NO. 1:13 CV 901 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Ptl. Jeremy Smith, et al., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**Introduction**

This matter is before the Court upon the Motion for Summary Judgment of Defendant Kyle Sheehan (Doc. 42), Motion for Summary Judgment of Defendant Jeremy Smith (Doc. 43), and Motion for Summary Judgment of Defendant Giant Eagle (Doc. 44). This case is a § 1983 action and arises out of plaintiff's arrest, detention, and incarceration. For the following reasons, the motions of Smith and Giant Eagle are GRANTED and the motion of Sheehan is GRANTED IN PART and DENIED IN PART.

**Facts**

Plaintiff Erik Ferrell filed this Complaint against defendants Ptl. Jeremy Smith, Ptl.

1

Kyle Sheehan, and Giant Eagle.[1] The following facts are presented to this Court.

Defendant Officer Kyle Sheehan testified to the following.  Sheehan was an auxiliary police officer for the City of Westlake and a police officer for the City of Wakeman.  At the time of the incident herein, Sheehan was also employed by Security Hut, a company which employs off-duty police officers to provide private security at certain Giant Eagle and Getgo locations. While working for Security Hut, Sheehan was considered as, and his duties were the same as, an "off-duty police officer."  Sheehan was in his full "off-duty" police uniform- a "set of blues" and a duty belt.

On the date of the incident alleged in the Complaint, the evening of September 19, 2010, Sheehan was working at Giant Eagle and was standing at the front of the cash registers by the exit doors. He heard a loud bang when plaintiff shoved the door to the store open. Sheehan kept his eye on plaintiff because "that's not normal behavior for somebody." Plaintiff then took the cart of the loss prevention officer, also referred to as the "secret shopper," and "shoved it into the aisle."  The secret shopper then approached Sheehan and told him what plaintiff had done.  Consequently, Sheehan was observing plaintiff throughout the store and he "appeared to be stumbling.  Not acting right."  After he purchased several items, Sheehan approached plaintiff and asked him if he was okay for plaintiff's own safety and welfare.  Sheehan "wanted to make sure he wasn't driving and being safe." This is considered in law enforcement a "welfare check."

This first encounter with plaintiff occurred inside the store.  Sheehan identified

---

[1] Plaintiff also named as defendants Ptl. Justin Ludwig, Ptl Kevin Pozek, Aux. Ptl. George Kish, and Ptl. Christopher Swope.  The claims against these defendants have apparently been resolved. (Docs. 29, 35)

2

himself as an off-duty police officer and asked plaintiff to talk with him. And,

> [Plaintiff] stops. He's stumbling. His eyes are bloodshot. He reeks of an alcoholic beverage. I said, are you okay? The reason I'm talking with you is I had a report from the secret shopper that you had taken her cart and shoved it out of the way. And he literally replied, fuck you. I said, okay. My second question, sir, is how much have you had to drink today? And he said, fuck you. And I said, okay, sir, did you drive here tonight? And he said, fuck you. And he then at that point continued to walk outside of the store.

For his safety, Sheehan asked plaintiff to step up onto the curb and sidewalk and have a seat while he contacted the local Maple Heights police department. While Sheehan was on the phone with the police, plaintiff was sitting against the wall of the Giant Eagle outside the exit door. Sheehan identified himself over the phone as an off-duty police officer. "The second" plaintiff heard that Sheehan was an off-duty Wakeman police officer and not a Maple Heights officer, he "became agitated and began screaming obscenities out to the crowded parking lot. And walking in that roadway." Plaintiff said something to the effect of "you can't fuck with my freedom." Sheehan asked plaintiff to step up onto the curb out of traffic. Plaintiff responded, "Fuck you. You are not going to keep me here." At that point, Sheehan alerted his back-up security officer on duty that night for Security Hut, co-defendant Smith, to his location outside in the parking lot. Upon his arrival, Sheehan asked Smith to help him move plaintiff out of traffic and onto the sidewalk. Plaintiff became very agitated with Smith. Plaintiff stated that he would put down his groceries and step onto the sidewalk. He then pointed to Sheehan and said that Sheehan would "have to arrest [him] for whooping ... [Smith's] ass." Sheehan advised plaintiff that if he made an aggressive movement toward either officer, he would be pepper sprayed. Plaintiff then "cock[ed] back his right forearm, and [got] into a fighting stance, like he [was] going to strike Officer Smith." Sheehan then

3

restrained plaintiff against the wall of the Giant Eagle.  Plaintiff advanced on Sheehan a second time.  Sheehan restrained him and pepper sprayed him.  Plaintiff wiped off his face and said, "Is that all you got, mother fucker?" Plaintiff came at Sheehan a third time and Sheehan wrestled him to the ground.  At that point, the Maple Heights police officers arrived, handcuffed plaintiff, and arrested him. (Sheehan depo.) Sheehan prepared a statement for the Maple Heights police the evening of the incident which was consistent with his deposition testimony.

According to defendant Jeremy Smith's deposition testimony, he was a reserve police officer for the City of South Amherst at the time of the incident herein.  On the evening of the events here, Smith was employed by Security Hut as a security officer and was assigned to patrolling the parking lot.  Smith was not acting as a police officer, and had to be requested by a police officer to give assistance. Unlike the police officers, he did not have arrest powers as a security officer of Security Hut. Security Hut provided Smith with his uniform of a white shirt and dark pants. As Smith approached, he saw that Officer Sheehan was trying to get plaintiff out of traffic and onto the sidewalk in order to talk with him. Plaintiff was extremely frustrated and using vulgarities with Sheehan. Smith had no other prior information.  Smith introduced himself to plaintiff as a South Amherst police officer and asked him to come back onto the sidewalk so that Sheehan could talk with him. Plaintiff stated that Sheehan would have to arrest him for kicking Smith's ass. Sheehan warned plaintiff that if he did not stop being aggressive with the officers, he would use the pepper spray on him. The three were then on the sidewalk when plaintiff put down his grocery bags, got up close to Smith's face, and then started to make a fist toward Smith's face.  As plaintiff "reared back" with his right arm,

4

Sheehan "plowed into him." At that point, Maple Heights police officers appeared on the scene. (Smith depo.) Smith's statement for the Maple Heights police provided the same information.

According to plaintiff's deposition testimony, he stated the following. He is currently a student in Las Vegas. At the time of the incident he had been unemployed since 2007 due to a mental disability and was taking prescribed medications, Effexor and Clozapine. Plaintiff has been diagnosed with schizophrenia. He had been drinking at his friend's house on the day of the incident herein. Plaintiff had "a few beers," spaced throughout the day. Plaintiff could not recall whether he took his prescribed medications that day, the day before, or two days before. He also testified that he takes his medications at night and he had taken them the night before the incident. Plaintiff walked to Giant Eagle. He shopped without a cart and without any incident. After he paid and left the store, he was approached by Officer Sheehan from behind who called out, "Hey, you." Plaintiff turned around and saw he was a police officer. Sheehan asked plaintiff what he was doing and

> You know, so I'm thinking, you know, maybe he thinks I shoplifted or something. So, you know, I'm complying. I'm like, you know, I have a receipt if you want to see that. Or- and then he's like, come here. I'm like, what for? I didn't do anything wrong. And then, you know, so I turn around. And I'm walking off. It's either you want to see my receipt or not. Because I did nothing wrong. As I proceed to leave, continue walking down the sidewalk, he runs in front of me and he pepper sprays me. And so, I'm like, you know, I have the bags in my hand. And I'm trying to wipe my eyes. And all of a sudden, he throws me up against the wall. He scars my face, scratches my face against the concrete wall. And he throws me down to the ground. And then, you know, he proceeds to get on top of me. And he says, you're under arrest. And I'm like for what? And he's like, assaulting a police officer or peace officer, or something to that nature...
>
> And there was another guy there. He comes up, and he's assaulting me... He kicked me, punching me...

5

When asked whether he denied using the word "fuck" prior to being pepper sprayed, plaintiff responded, "No." Plaintiff testified that he could have also used that word in response to Sheehan telling him to come here. "I could have said- it's possible I could have said, fuck off or fuck you or whatever."

Plaintiff never resisted any of the officers. He did not resist Sheehan's attempts to put handcuffs on him. He did not resist the attempts of the Maple Heights officers to arrest him. When asked whether it was his contention that he "just laid on the ground peaceably at all times once you came in contact with the ground?" He answered, "Yes." (pltf. depo.)

Plaintiff submitted a declaration with his brief which states the following. On September 10, plaintiff was visiting his friend at his home in Maple Heights and had arrived between noon and 1:00. Plaintiff's son was coming over for a visit the next day, so around 10:00 p.m. plaintiff walked to Giant Eagle to purchase food. Plaintiff had had a few beers but was not intoxicated. When he arrived at Giant Eagle, plaintiff was thinking clearly and not stumbling. After he entered the store, plaintiff picked up food and carried his items to the register. He paid for his groceries by swiping a card. His items filled at least two grocery bags. He never pushed anyone and never pushed a shopping cart into shelving. He did not knock over any items and he paid for all his groceries. Plaintiff walked out of the store. He did not walk into the parking lot, but proceeded to walk along the front of the store to the side street. He was around 15 feet from the exit of Giant Eagle when Officer Smith yelled at him. He had not shoplifted and there was no reason to stop him. He should not have been arrested, but did not resist. He did not fight with or attempt to harm anyone, including the police. He did not rear or bring his fast back or make any threatening movements. (pltf. decl.)

6

Plaintiff was arrested by the Maple Heights Police Department. Officer Ludwig prepared the police report which stated that the officers had been dispatched to Giant Eagle concerning an intoxicated male who was causing a disturbance. The report further stated in part:

> Upon my arrival, I observed a black male, later identified as Erik Ferrell, approach a security officer, later identified as Jeremy Smith. This incident took place along the northwest corner on the outside of Giant Eagle. Erik Ferrell approached Jeremy Smith in an aggressive manner, and he stood face-to-face with Jeremy Smith. Erik Ferrell was so close to Jeremy Smith that their faces almost touched. Another security officer, later identified as Kyle Sheehan, placed Erik Ferrell along the wall. Erik Ferrell turned off the wall and advanced on Kyle Sheehan. Kyle Sheehan then unholstered his foam pepper spray and administered a one second blast into Erik Ferrell's face. This did not phase Erik Ferrell and he again advanced on Kyle Sheehan. Kyle Sheehan again put Erik Ferrell against the wall. Erik Ferrell turned off the wall and Kyle Sheehan took Erik Ferrell down to the ground. Kyle Sheehan got Erik Ferrell's left arm behind his back and cuffed it. Kyle Sheehan was on top of Erik Ferrell's back, to stabilize his movement. Aux. Kish #448 arrived on scene and he restrained Erik Ferrell's leg. I was on Erik Ferrell's right side attempting to control his right hand; however, I was not able to because Erik Ferrell had his arm curled up by his head. I tried to pull his arm behind his back, but Erik Ferrell was resisting and I could not. Twice, I told Erik Ferrell to place his arm behind his back and he did not comply. I then administered two knee strikes to the right side of Erik Ferrell's torso, in order to distract him. Erik Ferrell then placed his arm behind his back and Kyle Sheehan handcuffed him.

(Doc. 42 Ex. 5) The Maple Heights Police jail booking document states that plaintiff was "highly intoxicated." (*Id.*)

Maple Heights Police Officer Ludwig signed a warrant for disorderly conduct and resisting arrest against plaintiff. Smith signed a warrant for menacing.[2] (Doc. 42 Ex. 5) Plaintiff later plead no contest in the Garfield Heights Municipal Court and was found guilty

---

[2] Officer Ludwig's offense report also indicates that plaintiff was charged with possession of marijuana. The Garfield Heights Municipal Court docket shows that this charge was dismissed in a case separate from the charges involving menacing, disorderly conduct, and resisting arrest.

7

of disorderly conduct. The charges of resisting arrest and menacing were dismissed. (Doc. 42 Ex. 6)

The claims remaining against defendants Sheehan and Smith are excessive force under § 1983 (Count One), state law assault and battery (Count Two), false arrest under § 1983 and state law (Count Three), abuse of process (Count Four), intentional infliction of emotional distress (Count Five), and conspiracy (Count Six). Two claims have been asserted against Giant Eagle: negligent hiring, training, and supervision (Count Seven) and *respondeat superior* (Count Eight).

This matter is now before the Court upon the motions for summary judgment filed by Sheehan, Smith, and Giant Eagle. The motions will be addressed together.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc*., 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

Initially, the Court notes that plaintiff has indicated in his brief that he concedes the dismissal of the following claims: state and federal false arrest claims against Smith; abuse of process claims against all defendants; conspiracy claims against all defendants; and negligent hiring, training, and supervision claims against Giant Eagle.

**(1) Individual Defendants**

**(a) false arrest**

Plaintiff asserts false arrest under § 1983 and state law. This claim remains only as to Sheehan. "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Arnold v. Wilder,* 657 F.3d 353 (6th Cir.2011) (citing *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir.2010). "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense." *Id.* (citations omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.*

Similarly, "To succeed on a claim of false arrest or imprisonment, a plaintiff must establish that the defendants were without legal authority to arrest and detain him and that the detention was not accomplished pursuant to accepted legal procedures." *Drake v. Village of Johnstown, Ohio*, 534 Fed.Appx. 431 (6th Cir. 2013). Furthermore, "The existence of probable cause to arrest defeats a false arrest claim." *Id.* (citations omitted) "Probable cause is "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Id.*

Defendants assert that plaintiff's false arrest claim is precluded by the fact that he pleaded no contest to and was convicted of the charge of disorderly conduct in the Garfield Heights Municipal Court.

Plaintiff contends that he was detained for no lawful purpose and without probable cause. According to plaintiff's testimony, he had done nothing wrong when Sheehan approached and detained him. Moreover, plaintiff asserts, Sheehan's and Smith's versions of the facts regarding plaintiff's arrest conflict with each other and lack credibility. Plaintiff points to the following.

- Sheehan's report states that plaintiff shoved the loss prevention officer (secret shopper) while he testified at deposition that plaintiff took the shopping cart from the secret shopper and pushed it into an aisle of goods.

- Smith testified at deposition that the secret shopper and Sheehan told him that plaintiff bumped into the secret shopper, but he did not mention this in his statement to the Maple Heights police.

- Officer Ludwig did not mention a secret shopped but stated in his report that he spoke with Sheehan who stated that when plaintiff entered the store he staggered around and "knocked into several shopping carts."

- The secret shopper never gave a statement and was never interviewed.

- Sheehan testified at deposition that he was on top of plaintiff and placing a cuff on one of his hands for 15 seconds before he heard the Maple Heights police sirens.  But Sheehan's statement for the Maple Heights police stated that he and the Maple Heights officers took plaintiff to the ground.  Smith testified at deposition that plaintiff was upright when Maple Heights arrived.

- Sheehan admitted at deposition that plaintiff had not broken any laws while entering or exiting the store.

11

- Sheehan testified at deposition that plaintiff was stumbling while in the store, but this was not included in his statement to the police. Sheehan testified that he might have forgotten to put it in the statement.

- Sheehan testified that he and Smith filled out their statements in the upstairs break room at Giant Eagle. Smith testified that they wrote out their statements on the hoods of the cars in the Giant Eagle parking lot.

- Smith testified that it is illegal to stop someone if you do not have a belief that he has committed a crime, and it appeared to him that plaintiff just wanted to go home.

These pieces of evidence are not "significantly probative" so as to defeat summary judgment. Moreover, as discussed above, a fact is material only if its resolution will affect the outcome of the lawsuit. The disputes, for example, of whether plaintiff shoved the secret shopper or took her shopping cart would not affect the case's outcome.

More importantly, however, plaintiff entered a plea of no contest to disorderly conduct and a guilty verdict was entered. This precludes a § 1983 claim for false arrest or false imprisonment. *Mason v. Holmes,* 2014 WL 696418 (N.D.Ohio Feb. 24, 2014)(The Sixth Circuit has found a plaintiff's claim for false imprisonment to be barred where he has pleaded no contest to the charges of disorderly conduct in state court) (citing *Jackim v. Sam's East, Inc.,* 378 Fed.Appx. 556 (6th Cir. 2010) (Plaintiff's no contest plea in state court collaterally estopped her pursuit of a § 1983 action for unlawful seizure based upon lack of probable cause for arrest as she conceded the existence of probable cause in a no contest plea.) Plaintiff attempts to avoid this well-established law by arguing that he is not challenging his arrest by the Maple Heights officers but the initial stop by Sheehan. Plaintiff asserts that the

12

initial stop was unlawful because he had not committed any crime.  But the undisputed evidence shows that Sheehan did not stop plaintiff because he believed plaintiff had committed a crime and plaintiff's own testimony is that he ignored Sheehan's request to stop. The police offense report shows that plaintiff was cited for disorderly conduct arising out of his intoxicated state and his altercation with Smith, Sheehan, and Ludwig.  Plaintiff entered a plea of no contest to that charge.  Therefore, he is barred from asserting a claim of false arrest under either state or federal law.

Summary judgment is warranted on this claim.

**(b) excessive force**

Defendants assert that plaintiff provides no evidence in support of his excessive force claim.[3]  In particular, the evidence shows that Officer Sheehan used no more force than was necessary under the circumstances and Officer Smith had no physical contact with plaintiff.

Section 1983 provides a cause of action to those deprived of a constitutional right by law enforcement officers acting under the color of state law. *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir.2000). The Fourth Amendment prohibits the use of excessive force by arresting officers. *Meirthew v. Amore*, 417 Fed.Appx. 494 (6th Cir. 2011) (citations omitted). The Sixth Circuit recently summarized the contours of a Fourth Amendment excessive force claim:

> 'A claim of excessive force under the Fourth Amendment requires that a plaintiff demonstrate that a seizure occurred, and that the force used in effecting the seizure was objectively unreasonable.' *Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir.2011). Whether a constitutional violation based on excessive force occurred

---

[3] Defendants do not assert that they are entitled to qualified immunity, but only argue that no constitutional violation occurred.

13

> 'depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight.' *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir.2007) (citing *Graham v. Connor*, 490 U.S. 386, 395–96 (1989)). In making its determination, the Court should 'pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' ' *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir.2010) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir.2001)). This is not an 'exhaustive list,' and the inquiry ultimately turns on whether the seizure was reasonable under the 'totality of the circumstances.' *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008).

*Bozung v. Rawson*, 2011 WL 4634215 (6th Cir. Oct. 7, 2011).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. O'Connor*, 490 U.S. 386, 396–97 (1989).

Additionally, although this Court evaluates the decision to use force "from the perspective of an objective officer, the facts must still be viewed in a light most favorable to the plaintiff." *Id*. (citing *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008)).

A no contest plea to disorderly conduct arising from the subject incident is not dispositive of an excessive force claim. *Marmelshtein v. City of Southfield,* 421 Fed. Appx. 596 (6th Cir. 2011).  While a plaintiff admits to behaving "in a disorderly manner, this does not give the officers license to use disproportionate force to subdue him." *Id.*  The police report states that plaintiff was intoxicated, caused a disturbance, made menacing movements towards Smith, advanced on the officers, and resisted attempts to subdue him.  Plaintiff's deposition testimony and declaration herein deny that he was intoxicated, made any aggressive movements, or resisted the officers in any manner.  But, plaintiff entered a plea of

14

no contest and a guilty verdict was entered for the charge of disorderly conduct. Therefore, plaintiff conceded that he behaved in a disorderly manner. For the following reasons, the Court finds an issue of fact.

As set forth in detail above, defendants assert that the evidence shows that the officers' actions were taken as a result of plaintiff's agitation and threats to fight the officers. Plaintiff argues that he did nothing wrong and posed no risk to the officers and yet he was pepper sprayed, thrown up against a wall, thrown to the ground, kicked, and punched. Plaintiff's declaration and testimony conflicts with the officers' version of the events. This alone creates an issue of fact as to the degree of plaintiff's disorderly conduct and, therefore, whether the force used was proportionate to the conduct. Sheehan is not entitled to summary judgment on the claim of excessive force.

As to Smith, however, the Court finds there is no issue as to whether he used excessive force. Both Smith and Sheehan testified that Smith laid no hand or foot on plaintiff. Sheehan was asked whether Smith said or did something to elicit plaintiff's violent response. Sheehan stated, "Smith didn't say anything other than his politely asking Mr. Ferrell to stand up on the sidewalk, so he would be out of traffic." (Sheehan depo. 124) Smith testified that "I never laid a hand on Mr. Ferrell." And, when asked whether at any time he made any physical contact with plaintiff, Smith responded, "No, I did not." (Simth depo.20, 84)

Plaintiff testified that after the first officer stopped him outside the store, questioned him, pepper sprayed him, threw him against the wall and then to the ground, "another guy" showed up. This second person would have been Smith. Plaintiff testified that this "second person" was the one who assaulted him by kicking him and punching him. According to

15

plaintiff, this second person had on a "cop uniform" similar to what Sheehan was wearing and with a gun belt. (pltf. depo. 31-32) But Smith testified that he was wearing a white Security Hut shirt. (Smith depo. 39) Thus, he was not wearing a uniform similar to Sheehan who was wearing his "set of blues," a regular police uniform. (Sheehan depo. 17, 19) In fact, Ludwig stated in his police report that it was he who kicked plaintiff. (Doc. 42 Ex. 5) Ludwig, as an on-duty police officer, would have been wearing a uniform similar to Sheehan's.

For these reasons, summary judgment is granted on the § 1983 excessive force claim as to Smith.

### (c) assault and battery

The assault and battery claim is asserted under state law. Defendants argue that Sheehan and Smith are entitled to state law qualified immunity from this claim. Ohio Revised Code § 2744.03(A)(6) provides statutory immunity from liability to police officers unless they are shown to have acted outside the scope of their employment or official responsibilities or "with malicious purpose, in bad faith, or in a wanton or reckless manner." An off-duty police officer who takes active part in an arrest is, by definition, engaged in his official duties, and thus is shielded from civil suit. *Van Hull v. Marriott Courtyard,* 87 F.Supp.2d 771 (N.D.Ohio 2000) (citations omitted).

This issue may be addressed by the Court "through the lens of the federal qualified immunity analysis." *Chappell v. City of Cleveland,* 585 F.3d 901 (6th Cir. 2009). Because the Court has already determined that there is an issue of fact as to excessive force with regard to Sheehan, summary judgment is not warranted on this claim. Because the § 1983 claim fails as to Smith, this claim fails as well as to him.

**(d) intentional infliction of emotional distress**

Defendants assert that they are entitled to immunity pursuant to Ohio Revised Code § 2744.03(A)(6) because they have not acted outside the scope of their employment or official responsibilities or "with malicious purpose, in bad faith, or in a wanton or reckless manner." Rather, they were both commissioned police officers acting in their official off-duty capacities.  And, plaintiff has not supported his assertions that defendants' conduct was outrageous or in a wanton and bad faith manner.

Plaintiff contends his deposition testimony and declaration show that defendants' actions were done with malicious purpose, in bad faith, or in a wanton or reckless manner. For the same reasons discussed above, this claim fails as to Smith and there is an issue of fact as to Sheehan.

**(2) Giant Eagle - respondeat superior**

"The respondeat superior doctrine states generally that an employer or principal is vicariously liable for the torts of its employees or agents. *Sanders v. Fridd*, 998 N.E.2d 526 (Ohio App. 10th Dist. 2013).

Giant Eagle asserts that Sheehan and Smith were employed by Security Hut and not Giant Eagle and, therefore, there was no employment relationship between them. As Smith and Sheehan acted to carry out the duties and responsibilities accorded them by Security Hut, they were not acting for Giant Eagle at the time of the incident herein.  Plaintiff points to Sheehan's deposition testimony that he had authority from Giant Eagle to make an arrest. (Sheehan depo. at 39) The Court agrees with defendants that the undisputed evidence shows that Giant Eagle was not Sheehan's employer.  (Sheehan depo. 13, 14, 41, 112, 113)

17

Giant Eagle is entitled to summary judgment.

**Conclusion**

For the foregoing reasons, defendants are entitled to summary judgment except as to the excessive force, assault and battery, and intentional infliction of emotional distress claims against Sheehan.[4]

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 7/16/14

---

[4] Plaintiff asks the Court to "disregard and/or strike the argument and evidence" defendants submit regarding plaintiff's medication and the effects of its interaction with alcohol. The Court has not considered the report. Therefore, this issue is moot.